LAWRENCE B. THOMPSON, Administrator of the Estate of J. E. GLASS, Deceased, Appellee, v. CHICAGO GREAT WESTERN RAILROAD COMPANY, Appellant.

Railroads: CONTRIBUTORY NEGLIGENCE: EVIDENCE. One of mature age
1   intending to take a train in the night, who was aware of the approach of a train and knew it was so near that to pass in front of the engine to the station it was necessary to quicken his speed, was guilty of contributory negligence as a matter of law in attempting to thus cross the track.

Same: INSTINCT OF SELF-PRESERVATION: INSTRUCTION. Where there
2   are no eye witnesses to an accident the presumption arising from the instinct of self-preservation obtains: but where there was evidence of witnesses that they saw deceased hurrying to cross the track to the station in front of the approaching train, and observed his movements up to the time the train struck him, an instruction that the law presumes that decedent, impelled by the instinct of self-preservation, was in the exercise of due care was inapplicable to the facts.

*Appeal from Shelby District Court.*—HON. A. B. THORNELL, Judge.

WEDNESDAY, JULY 2, 1913.

ACTION to recover damages for death, alleged to have re-

sulted from the negligence of the defendant. From a verdict and judgment in favor of plaintiff, defendant appeals. —*Reversed.*

*Carr, Carr & Evans,* and *Byers & Byers,* for appellant.

*J. B. Rockafellow,* and *Cullison & Cullison,* for appellee.

WITHROW, J.—I. The deceased, J. E. Glass, was killed by a passenger train operated by the defendant over its line of railway at Shannon City on the morning of February 17, 1910.

He had arrived at the village the evening before, took lodging at a hotel, and was called the next morning about 5 o'clock to take the train which was due at 5:28 a. m. The defendant kept no night office at Shannon City, and its depot and depot grounds were at the time unlighted. Mr. Glass remained at the hotel until the whistle of the locomotive was heard, when, with a traveling man, Mr. West, and the landlord, he started for the station, the landlord carrying a lantern, it being yet dark. The depot was on the south side of the track. North of the main track were a passing track, a side track, and a stub track, running almost parallel with the main track, where it was the purpose of decedent to cross. The hotel was about two hundred and twenty-five to two hundred and fifty feet north of the tracks and station. The evidence shows that the station blast had been given by the locomotive and as the train approached, slowing down in response to signal to stop, its bell was ringing. As they approached the station Mr. West was in the lead, and crossed the track ahead of the approaching train. Nearing the track, Mr. Glass quickened his pace into a trot, and passed or went ahead of the landlord, Mr. Miller. When Mr. West, the traveling man, reached the station platform, he turned to look for his companions, saw them in front of a blacksmith shop, between the hotel and the station, and observed their move-

ments until his view was obstructed by the train. He last saw Mr. Glass, the decedent, near the north rail of the main track, hurrying, and in advance of the landlord, whom the witness says Mr. Glass left behind when they got near the switch tracks. Two ladies, who were at the station to take the train, observed the movements of Mr. Glass and the landlord until the train came between them, both stating that the last they saw of Mr. Glass he was running towards the station. The testimony quite satisfactorily shows that the headlight was burning, some of the witnesses stating that it could be seen from probably a mile away as it approached. Mr. Miller, the landlord, testified that he thought he saw the form of Mr. Glass, but indistinctly, just as the train struck him. The engineer and the fireman both testified that they did not see the approach of Mr. Glass.

The trial court submitted to the jury the several charges of negligence, as follows: (1) That the defendant was negligent in failing to have its depot and depot grounds lighted at the time of the accident. (2) That the engineer and fireman failed to keep a sufficient lookout. (3) In failing to give sufficient signals and warnings of the approach of the train. (4) In operating its train at a high rate of speed.

At the close of plaintiff's case the defendant moved for a directed verdict, on the ground of the contributory negligence of plaintiff's intestate, which motion was overruled. In addition to its general verdict for plaintiff, the jury, on its own motion, specially found that the defendant was negligent in not having its depot grounds lighted, so that persons approaching the depot might distinguish the tracks they were obliged to cross to reach the station; also, upon submitted interrogatories, it found that Mr. Glass was not seen by the witness West up to the very moment he was struck by the engine.

II. We think that the motion for a directed verdict on the ground of the contributory negligence of the decedent

should have been sustained.   The whole evidence admits of no

1. RAILROADS:·                    other   reasonable   conclusion   than   that   Mr.
   contributory          ·Glass  was  fully  aware  of  the  approaching
   negligence:
   evidence.              train,  recognizing  that  it  was  so  near  that. if
he. passed in front of it he must quicken his speed, and also,
as a man of mature years, was presumed to know and realize
the dangers attendant upon 'passing or attempting to pass in
front of a moving train.   The duty to stop, look, and listen,
urged by appellant as a guide to conduct in approaching a
place where it is known there may be danger, is primarily
applicable to cases where the immediate danger is not ap-
parent, but in the exercise of reasonable care may be discov-
ered.   But it is not, to our minds, controlling in the present
case, for the reason that the decedent knew of the approaching
train, his movements towards the station being because he had
such knowledge and desired to take passage on the train.   That
he knew that he had but a bare opportunity to safely pass in
front of it is evidenced by the fact that when near, and ap-
parently realizing he must hurry if he reached the platform
ahead of it, he used haste.   There is no evidence of any con-
ditions which fairly tend to show that he was, for a moment,
temporarily bewildered, or otherwise affected in such way as
to relieve him from the duty imposed upon him; but, on the
contrary, the whole record shows, without substantial differ-
ence in the testimony of all the witnesses who saw him, that
he was apparently acting with the single purpose to reach the
platform ahead of the train, and the description of his move-
ments admits of no other fair conclusion.

The different grounds of negligence urged were all based
upon the duty of the defendant to so keep its depot grounds
and operate its trains that one approaching might have warn-
ing, protection, and safe passage to its platform.   That such
duty existed, as severally stated in the instructions, may be
taken as true.   But we cannot, from the evidence, escape the
conclusion that the decedent, in approaching the station with
full knowledge of danger, and. in his desire to reach the plat-

form, took the risk which resulted in his death, and that, in so' doing, he failed, in the light of all the circumstances then known and reasonably to be apprehended by him, to exercise that vigilance which was required of him.

III.   The trial court instructed the jury as to the presumption arising from the instinct of self-preservation, as follows:

(15) In this case, the accident resulted in the death of Mr. Glass, and if it appears from the evidence that at the time the injury that caused his death occurred there was no eyewitness of how Mr. Glass was conducting himself, who can now say what he was doing as to looking or listening for the approach of said train, the law would presume that Mr. Glass, impelled by the instinct of self-preservation, was at the time exercising such care and caution as men of ordinary prudence, judgment, and discretion exercise under like circumstances and in relation to the same matters, unless the facts and circumstances shown by the evidence negative such presumption; that is, negative the presumption that Mr. Glass did exercise reasonable care by making vigilant use of his senses of sight and hearing to apprise himself of where the train was and the danger of attempting to cross said track ahead of said train. Whether there was any eyewitness who can now say what Mr. Glass was doing at the time he was injured and killed is a question of fact, to be decided by you from the evidence.

2. SAME: instinct of self-preservation: instruction.

In the light of the facts in this case we think that in giving this instruction the court committed error. The rule stated in the instruction has its application to cases where the record is silent as to facts bearing upon the conduct of the party at the immediate time of the accident, but cannot, we think, apply to conditions such as appear in this record. The movements of the deceased, until the intervening train obstructed their view, were given by Mr. West and the two ladies on the platform. From that movement, and for a time preceding it, they were described by the landlord. All agree that Mr. Glass

was hurrying, moving directly in the line of the approaching train, impelled only by the purpose to reach the platform in time; and it is all so closely related to the immediate moment of the accident that to give proper effect to the criticised instruction it must be held that there was evidence which tended to show a period of time in which the instinct of self-preservation asserted itself. Such may have been the case, but if so, under this record, it was at the moment when his want of care, as shown by direct testimony, had carried him so far that it was too late to escape injury. Under such a state of facts the rule could not apply. See *Baker v. Railway Co.*, 95 Iowa, 163; *Bell v. Town of Clarion*, 113 Iowa, 126; *Burk v. Walsh*, 118 Iowa, 400; *Ames v. Railway Co.*, 120 Iowa, 640.

We deem it unnecessary to review the remaining errors urged in the assignment. For the reasons given, the judgment of the lower court is *Reversed*.