CLAAR TRANSFER COMPANY et al., Appellants, v. OMAHA & COUN-
CIL BLUFFS STREET RAILWAY COMPANY et al., Appellees.

NEGLIGENCE: Contributory Negligence—Choosing Dangerous in Lieu
1   of Safe Way. One who drives upon a combination street railway and wagon bridge, and in a dense screen of smoke, with full knowledge that he may at any time meet a street car, while a perfectly safe way has been provided for him, is guilty of negligence *per se.*

WEAVER, J., dissents.

NEGLIGENCE: "Last Clear Chance"—Essential Elements. Principle
2   reaffirmed that the doctrine of the "last clear chance" has no application, in the absence of evidence that the one sought to be charged had *actual* knowledge of the danger of the person seeking recovery.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER,
Judge.

MARCH 16, 1921.

ACTION to recover damages for injury to auto truck and contents thereof, caused by the alleged negligence of defendants. Directed verdict for defendants, and judgment entered against plaintiff for costs. Plaintiff appeals.—*Affirmed.*

*Kimball & Peterson* and *A. G. Kistle,* for appellants.

*Tinley, Mitchell, Pryor & Ross,* for appellees.

DE GRAFF, J.—The two primary propositions relied upon for reversal are: (1) That the contributory negligence of the plaintiff was a question of fact for the jury; (2) that the doctrine of "last clear chance" should have been submitted to the jury.

1. NEGLIGENCE: contributory negligence: choosing dangerous in lieu of safe way.

It appears from the evidence that, on February 17, 1916, about 7:15 A. M., one of the employees of plaintiff was driving a truck eastward over the Missouri River toll bridge between Council Bluffs and Omaha. The truck weighed about 8,000 pounds, and was carrying a load of equal weight. At some distance west of the toll house, it came into collision with one of the street cars of the defendant railway company, which was moving westward along its single track on the south line of said bridge. By the collision and impact the truck was pushed in a southwesterly direction and off the bridge, causing it to fall a distance of about 100 feet, and practically destroying it and its contents. The bridge belonged to the defendant Omaha & Council Bluffs Railway & Bridge Company, as do the tracks and the equipment of the street railway, but it was maintained and operated by the defendant Omaha & Council Bluffs Street Railway Company. This bridge was used, not only as a street car bridge, but also as a wagon bridge and a foot passenger bridge. The sidewalk for pedestrians was constructed along the north side of the bridge, and between the sidewalk and the driveway for wagons was a guard rail. The wagon driveway was about 17 feet in width. South of the wagonway was the street car track, and then a space of about two feet, and another guard rail. The car track and vehicle passageway are paved with creosote blocks, and are about 25 feet in width. The bridge, at the point of the accident, is practically level for several hundred feet on either side. At the time in question, and at the place where the accident occurred, there was a heavy veil of smoke across the bridge, about 70 or 80 feet in width, which obstructed the view of a person coming or going on either side of it. This smoke screen was caused by

locomotives or by some manufacturing establishments. The smoke was being blown across the bridge from the north by a light breeze.

But one witness on the trial (Hoffman) saw the truck, prior to its actual contact with the street car. Hoffman was walking across the bridge to his work, at the time. He testified:

"I passed the truck at about the time that I was emerging from the cloud of smoke. The truck was astride of the north rail of the track, at the time it entered the smoke. At this point, I could not see clear to the end of the bridge, but only as far as the top of the incline of the bridge, about 300 or 400 feet. The crash took place in the middle of the smoke, as nearly as I can tell."

Witness Dodrill, who was standing 50 feet south of the bridge and about 100 feet from the point where the truck fell, testified:

"I just heard the crash, and looked up at the bridge. I could see the street car approaching, but I could not see the auto coming. I think there was smoke and fog together. I heard the street car coming, but had no knowledge of the truck coming. I could not see it or hear it. The street car was lighted up. It had the lights on. The fog and smoke was denser to the west, over to where the street car was, than it was east of that point."

After witness Hoffman saw the truck enter the veil of smoke, no one saw the truck until the crash came. Several persons saw it pushed back, pause for a moment on the edge, and then fall off of the bridge. The witnesses standing below the bridge did not see the truck until after the contact. The truck, so far as the record discloses, was the only vehicle at the time on the bridge, besides the street car. No one testified as to the ringing of a bell on the car or the blowing of a horn on the truck, although the latter was equipped with "a good shrill horn, that was in good order."

The street car was moving not to exceed 15 miles an hour. Plaintiff in its petition charges negligence on the part of the defendants in numerous particulars, and among other allegations are: (1) That the street car was moving at an excessively high rate of speed, and at a speed greater than that permitted by

the ordinance; (2) that the street car ran into this cloud of smoke without giving signals; (3) that the bridge was too narrow for the use of the wagons and the street car; (4) that the street car neglected to stop or slow down as the motorman saw, or could have seen, the danger to the truck; (5) that the truck was negligently shoved some distance after it had collided with the street car, and was finally shoved off the bridge.

I. If, as a matter of law, plaintiff's driver was guilty of negligence proximately contributing to the damage and injury alleged, then no occasion arises to discuss the allegations of negligence, or the proof offered upon which plaintiff predicates his right to recover. As heretofore stated, the evidence shows that plaintiff's driver was proceeding eastward astride the north rail of the street car track, and that he entered the cloud of smoke with his truck in that position. The physical injury to the street car clearly shows that the truck remained in the same relative position to the car track until the collision happened. The truck had been astride the north rail of the street car track for some distance before entering the barrage, and the record is silent as to the reason for its being on the car track.

Drivers of trucks, pedestrians, and street cars have equal rights on the streets of a city, and each must exercise those rights with regard to the rights of the other. For the purposes and under the circumstances of this case, we see no reason for a departure from this rule.

Was the evidence on the question of the contributory negligence of plaintiff's driver such that reasonable minds would differ as to its effect? We think not. It clearly shows that the driver of the truck was guilty of negligence contributing directly and proximately to the injury and damage alleged. Plaintiff's driver had a passageway for his vehicle; nevertheless, he drove upon a street car track, knowing at the time that he would probably meet a car coming from the opposite direction. He drove into this cloud of smoke with full knowledge that the track upon which he was driving was being used by the street car company, and he also had knowledge that there was ample room for him to have driven north of the track. Clearly, there would have been less peril to him had he driven in the wagonway, although he may have assumed that, in so doing, he would

be likely to meet vehicles coming from the opposite direction. He assumed the greater peril. He deliberately took a chance, and the record presents no reason why he was on the street car track rather than in the wagon track. True, he was privileged to use the street car track, but he was compelled, if he did use it, to exercise a greater degree of care, and commensurate with the danger. He drove into a zone of danger, when he knew there was a way open to a zone of reasonable safety.

As bearing upon the question of contributory negligence, see *Corning v. Maynard,* 179 Iowa 1065; *Snyder v. Heuer,* 184 Iowa 538; *Buzick v. Todman,* 179 Iowa 1019; *Thompson v. Chicago G. W. R. Co.,* 162 Iowa 468; *Haskell v. Kurtz Co.,* 181 Iowa 30; *Oaks v. Chicago, R. I. & P. R. Co.,* 174 Iowa 648; *Westcott v. Waterloo, C. F. & N. R. Co.,* 173 Iowa 355.

II. It is further alleged by plaintiff in his amended petition that, after the employees of defendant knew of the peril of plaintiff's driver, or should have known of his peril, defend-

2. NEGLIGENCE: "last clear chance:" essential elements.

ant's employees were negligent in not stopping the car. In other words, plaintiff seeks to inject into this case the doctrine of "the last clear chance."

There is no evidence in the record from which it may be said or determined that the motorman or any employee on said street car knew of the driver's peril in time to have avoided the accident. It is not shown that any employee of the defendant company ever saw the driver or his truck, prior to the collision. The "last clear chance" finds no application to the facts of this case.

As bearing upon this doctrine, see *Carr v. Inter-Urban R. Co.,* 185 Iowa 872; *Bourrett v. Chicago & N. W. R. Co.,* 152 Iowa 579; *Keefe v. Chicago & N. W. R. Co.,* 92 Iowa 182; *Bruggeman v. Illinois Cent. R. Co.,* 147 Iowa 187.

Defendant's motion to direct verdict was properly sustained, and the judgment entered thereon is—*Affirmed.*

EVANS, C. J., PRESTON and ARTHUR, JJ., concur.

WEAVER, J., dissents as to Division I.