AMANDA SHANNAHAN, Administratrix, Appellant, v. BORDEN PRODUCE COMPANY et al., Appellees.

No. 42955.

OCTOBER 23, 1935.

Gill & Gill, for appellant.

Jepson, Struble & Sifford and R. A. Oliver, for appellees.

DONEGAN, J.—About six o'clock on the evening of November 28, 1932, William Shannahan was driving from Le Mars to Sioux City on paved highway No. 75 in a model A Ford sedan. This road runs generally in a southwesterly and northeasterly direction, and, when Shannahan reached a point approximately one-half mile outside of the city of Le Mars, he ran into the rear end of a truck owned by the defendants, and received injuries from which he died very shortly thereafter. Amanda Shannahan, the widow of the decedent, was thereafter appointed administratrix of his estate and brought this action. At the close of plaintiff's evidence the trial court sustained a motion of the defendants for a directed verdict in their favor and entered judgment for the defendants, and the plaintiff appealed. The grounds of defendants' motion were set out in 13 separately numbered paragraphs, and the motion was sustained by the court generally. The real grounds of the motion, however, may be reduced to two, viz., first, that the evidence failed to show that the defendants were guilty of negligence which was the proximate cause of the accident; and, second, that the evidence

failed to show that the plaintiff's decedent was free from contributory negligence.

If the trial court correctly sustained the motion for a directed verdict on either of these grounds, there can, of course, be no reversal, because it was not only incumbent upon the plaintiff to prove that the negligence of the defendants was the proximate cause of the accident, but also that the plaintiff's decedent was free from negligence which contributed thereto. In determining the correctness of the trial court's ruling we must, of course, consider as true all of the facts established by the evidence in the light most favorable to the plaintiff, together with all reasonable inferences that may be drawn therefrom. We think there was evidence that the time of the accident was more than one-half hour after sunset, that it was then dark, that the truck owned by the defendants and with which the decedent's car collided was standing upon the paved part of the highway, that it did not have any reflectors on the rear thereof, and that there was no lighted tail lamp upon the rear of such truck, and, in considering the correctness of the trial court's ruling on the motion to direct a verdict, we will assume it was a question for the jury to decide whether the defendants were guilty of negligence and whether such negligence was the proximate cause of the accident.

 Our inquiry is, therefore, narrowed to the one proposition, Was the evidence such that the question of contributory negligence on the part of plaintiff's decedent should have been submitted to the jury?

It is undisputed in the evidence that the place where the accident occurred is upon a straight stretch of highway; that from approximately the point of the accident there is a slight grade downward to the southwest of about 1.24 per cent, and also a slight grade downward northeasterly of about .57 per cent; that there is no curve or change in the direction of the highway for approximately one-half mile on each side of the place where the accident occurred; that the plaintiff's decedent was driving southwesterly on this highway from Le Mars to Sioux City; that, just before his car collided with the defendants' truck, he was traveling at a rate of from 35 to 40 miles an hour; that the paved portion of the highway is 20 feet wide and there was a dry shoulder on the right or northwesterly side of the paved portion of the highway about six feet in width;

that at the time of the accident this shoulder was firm and dry and covered with dead grass of a grayish color; that shortly before the accident occurred two other trucks owned by the defendants were proceeding along this portion of the highway and, on account of some trouble which developed in one of them, they both pulled off to the right or northwesterly side of the paved portion of the highway onto the shoulder; that while these two trucks were thus standing upon the shoulder of the highway, the truck with which the car driven by Shannahan collided, and is referred to in the record as the "Hanford truck", came along the highway going from Le Mars toward Sioux City; that when this Hanford truck reached a point a few feet back of the place where the last or most northerly of the two trucks was parked on the shoulder, it stopped upon the paved portion of the highway and remained at the place where it thus stopped until the collision occurred; that, while these three trucks were thus standing, two on their right shoulder of the highway and the third on its right or northwesterly half of the paving, another truck driven by a man named Lake approached on the highway from the southwest going from Sioux City toward Le Mars; that when passing the trucks of the defendants, which were stopped on the shoulder of the road, Lake slowed down, asked the drivers of these trucks if they needed any help, was told that they did not, and then proceeded on toward Le Mars; that the headlights on Lake's truck were lighted, but that some time before he reached the first or most southwesterly of the two trucks that were parked on the shoulder of the road, Lake turned on what is known as his courtesy lights, so that the direct rays from the headlights were deflected downward toward the pavement; that, as Lake approached the trucks which were parked on the shoulder on the northwesterly side of the road, he saw the Shannahan car approaching from Le Mars and going toward Sioux City; that the Shannahan car was on its right or northwesterly side of the pavement, and its headlights were lighted; that when the truck which Lake was driving reached a point where his headlights were about even with the rear end of the Hanford truck the Shannahan car ran into the rear end of the Hanford truck; that at the time the Shannahan car hit the rear end of the Hanford truck, Lake, seated in the cab of his truck, was a little ways, about 10 feet, from the rear end of the Hanford truck; and that as the Shannahan car came up and hit the rear end of

the Hanford truck it was traveling at a speed of 35 to 40 miles an hour.

Among the grounds alleged by appellees in their motion for a directed verdict, because of the failure of the evidence to show that appellant's decedent was free from contributory negligence, were the allegations that the decedent, William Shannahan, was at the time of the accident violating the statute which required him to drive his car at such a speed as to be able to bring it to a stop within the assured clear distance ahead, and that he had failed to keep a proper lookout. The appellant contends that, because of the peculiar facts attending the accident, the court could not, as a matter of law, hold that the appellant's decedent was guilty of contributory negligence in either of these respects. The argument in support of this contention is substantially as follows: That the evidence was such that the jury could find therefrom that at the time of the accident the most southerly of the defendants' trucks was about 20 feet long; that there was a space of probably 20 feet between that truck and the second truck which was also parked upon the shoulder of the road and which was approximately 30 feet long; that there was a little space between the rear of the second truck and what is known as the Hanford truck; that the taillights were lighted on the rear of the first two trucks which were parked upon the shoulder of the highway; that there was no light and no reflectors upon the rear end of the Hanford truck; that the Hanford truck was painted yellow; that the body of the Hanford truck was approximately seven and one-half feet wide and occupied practically the entire width of the right or northwesterly half of the paved portion of the highway; that the point at which the collision actually occurred is just about where the break in the grade takes place, or a little to the southwest thereof; that because of the break in the grade about the point where the collision actually occurred the rays from the headlights of the Lake truck, although deflected toward the pavement, were thrown upon the windshield of the Shannahan car and into the eyes of appellant's decedent about the time he was approaching the rear end of the Hanford truck; that these rays of light cast upon his windshield and in his eyes would tend to obscure the vision of the appellant's decedent; and that, because the rear or taillights of the two trucks which were parked on the shoulder of the road were lighted, because the color of the Hanford

truck was nearly the same as the color of the pavement and the grass on the shoulder of the road, because the vision of appellant's decedent was obscured by the rays of light from the headlights of the Lake truck upon the windshield and in his eyes, the appellant's decedent was unable to distinguish the Hanford truck standing on the highway in front of him and was deceived into believing that there were no other cars ahead of him except the two trucks which were parked upon the shoulder of the road, and that the half of the highway on which he was driving was free from traffic and had no obstruction thereon.

Section 5029, Code 1931, which appellees claim was violated by the appellant's decedent, is as follows:

"Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead."

It is true that in the case of Kadlec v. Johnson Construction Co., 217 Iowa 299, 252 N. W. 103, we held that the driver of an automobile could not be held, as a matter of law, to be guilty of contributory negligence because of his failure to learn the presence of and avoid hitting a truck which was parked along the side of a street. In that case, however, we had the peculiar circumstances that the truck was one which had been used for hauling cement and was the same color as the pavement upon which it was standing; that the shadows caused by trees overhanging the street and the truck were such as to obscure it from view; that the truck was about eight feet wide and was parked with the rear right wheel about 20 inches from the curb; that the driver of the car was driving near the middle of the street where his lights were not cast directly on the truck and, because of the approach of the other car from the opposite direction, he turned toward the right side of the street to make room for the approaching car and did not discover the presence of the truck in time to avoid hitting it. These circumstances were all established by evidence presented upon the trial of the

case. In our opinion, the facts of the instant case do not bring it under the reasoning of the Kadlec case.

In the case at bar, the evidence is undisputed that the truck with which the car of appellant's decedent collided was painted yellow. The evidence shows that the body of this truck was about seven and one-half feet in width and that it had dual or double wheels upon the rear. A photograph of this truck, introduced as an exhibit and set out in the abstract, shows that on the rear of this truck there is a frame extending beneath the center portion of the rear end of the truck. On the bottom of this frame there is carried an extra tire which this exhibit indicates can be no more than approximately a foot to a foot and a half above the pavement. Above this tire and between it and the floor of the truck there are two cross pieces which are apparently made of wood and are the same color as the truck. Above this frame and hinged on the bottom so that it closes above the floor of the truck is the rear endgate which, from a comparison with the width of the truck, is approximately seven and one-half feet long and one and one-half feet or more in height. The evidence shows that at the time of the accident this truck was loaded with cream cans, that the body of the cream cans was tin and unpainted, and that above the rim where the cans taper in toward the opening in the top the cans were painted yellow; that only the yellow tops of the first row of cans standing on the floor of the truck and next to the endgate appeared above the top of the endgate; that a second tier of cream cans was stacked upright on the tops of the tier of cans which stood upon the floor of the truck, but did not extend any further back than about the second row of cans from the rear of the truck. There was thus directly in front of him, upon the right or northwesterly side of the pavement, as appellant's decedent approached the scene of the accident, this substantial obstruction into which he propelled his car at an estimated speed of 35 to 40 miles per hour, and with such force that it required the power of another automobile to pull it out from under the rear end of the Hanford truck. If one approaching an obstruction of the size and nature and difference in color presented by the rear end of this Hanford truck can be excused for running into it while going at the speed of 35 to 40 miles per hour, with no other or greater diverting circumstances than appear in the evidence in this case, we think there will be little left of this

statute which says that he must not travel at a speed greater than will permit him to bring his car to a stop within the assured clear distance ahead.

Appellant's contention is based upon the claim that the rays from the headlights of the Lake car struck the windshield of the Shannahan car and the eyes of plaintiff's decedent about the time he was getting to the place where his automobile lights would have disclosed the rear end of the Hanford truck, and that, as a result of the glare of these lights in his eyes and upon the windshield, he could not see the Hanford truck, but could see the taillights upon the other two trucks which were parked upon the right shoulder of the road, and that he proceeded under the belief that his half of the paved portion of the highway was clear. We think the evidence falls far short of proving that this is what occurred. The evidence is that Lake turned on his courtesy lights some distance before he reached the foremost truck that was parked upon the northwest side of the road, and that the courtesy lights remained on until after the accident. The evidence further is that the rays of these courtesy lights were deflected toward the pavement. There is no evidence whatever as to the angle at which these lights were deflected or how far in front of the headlights the rays would strike the pavement on a level road. There is, therefore, nothing but conjecture to support the contention that, because of the break in the grade of the pavement about the point where the accident occurred, the rays from these lights would have been thrown sufficiently high so that they would have struck the windshield of the car driven by appellant's decedent or glared in his eyes and obscured his vision. Moreover, even assuming that the rays from the deflected headlights of the Lake truck might, on account of the change in the grade, be thrown sufficiently high to strike the windshield of his car and obscure the vision of appellant's decedent, there is no evidence whatever to show that this is what happened, and there is no evidence whatever to show at what distance from the rear of the Hanford truck the rays would thus strike the windshield of the Shannahan car and obscure the vision of the driver. If his vision was obscured or blinded while he was still some distance from the rear of the Hanford truck, it was the duty of appellant's decedent to slow down or even stop his car until he could see that it was safe for him to proceed. Wosoba v. Kenyon, 215 Iowa 226, 243 N. W. 569; Greenland

v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953; Peckin-paugh v. Engelke, 215 Iowa 1248, 247 N. W. 822; Lindquist v. Thierman, 216 Iowa 170, 248 N. W. 504, 87 A. L. R. 893; Hart v. Stence, 219 Iowa 55, 257 N. W. 434, 97 A. L. R. 535; Fulker v. Pickus, 59 S. D. 507, 241 N. W. 321; Dalley v. Mid-Western Dairy Products Co., 80 Utah 331, 15 P.(2d) 309; Ruth v. Vroom, 245 Mich. 88, 222 N. W. 155, 62 A. L. R. 1528; Bowmaster v. William H. De Pree Co., 252 Mich. 505, 233 N. W. 395; Holsaple v. Superintendents of Poor, 232 Mich. 603, 206 N. W. 529; Sexton v. Stiles, 15 La. App. 148, 130 So. 821; Lauson v. Town of Fond du Lac, 141 Wis. 57, 123 N. W. 629, 135 Am. St. Rep. 30, 25 L. R. A. (N. S.) 40; Solomon v. Duncan, 194 Mo. App. 517, 185 S. W. 1141; Skaggs v. Willhour (Cal. App.) 289 P. 181; West Construction Co. v. White, 130 Tenn. 520, 172 S. W. 301; Ebling v. Nielsen, 109 Wash. 355, 186 P. 887. Under the circumstances in evidence in this case, we think it impossible to avoid the conclusion that the appellant's decedent either was not keeping a lookout as to what was ahead of him, or he was driving at a speed greater than would permit him to bring his car to a stop within the assured clear distance ahead. In either case he was guilty of contributory negligence.

■■■ The appellant contends, however, that, in the absence of proof to the contrary, we must indulge in the presumption, which has been recognized by the courts, that the appellant's decedent was prompted by the natural instinct of self-preservation or care for his own safety, and that his failure to see the truck before running into it, or his failure to avoid hitting it after he saw it, was not due to his negligence, but to the conditions existing at the point of the accident which made it impossible for him as an ordinarily prudent person to discover the truck in time to avoid hitting it. We do not think this presumption can apply in this case, first, because this rule does not apply where, as in this case, there were actual eyewitnesses to the accident; and, second, because the physical facts are such as to negative this presumption. The evidence in this case shows that the witness Lake, who was driving the car going toward Le Mars and in the opposite direction from that in which the appellant's decedent was driving, saw the headlights on the car of appellant's decedent approaching the Hanford truck when Lake was still some distance southwesterly from the trucks belonging to the defendants which were parked on the shoulder

of the road; that he, Lake, turned on his courtesy lights before reaching these trucks and slowed down while passing them; that the front end and the headlights of the Lake truck had reached a point about even with the rear end of the Hanford truck at the time that the collision occurred; and that Lake himself, seated in the cab of his truck, was about 10 feet from the rear of the Hanford truck when the Shannahan car hit it. From these physical facts it might be inferred that the car driven by appellant's decedent was in view of Lake until the instant that it reached the point of collision; but, even if this be not exactly the case, there was at most a very brief interval of time, during which the Shannahan car could have traveled only a very short distance, while Lake did not have a view of it. We think these facts prevent this case from coming within the rule that the appellant's decedent was prompted by the natural instinct of self-preservation and exercised due care for his own safety. In the case of Bussler v. Chicago, M. & St. P. Ry. Co., 165 Iowa 361, 145 N. W. 533, we said:

"The rule which recognizes such a presumption as proper to be considered is without application when there are eyewitnesses who testify as to the particular time and conduct. Wilson v. Illinois Cent. R. Co., 150 Iowa 33, 129 N. W. 340, 34 L. R. A. (N. S.) 687; Golinvaux v. Burlington, C. R. & N. Ry. Co., 125 Iowa [652], 656, 101 N. W. 465; Ames v. Waterloo & C. F. Rapid Transit Co., 120 Iowa [640], 647, 95 N. W. 161. In the present case while the only witnesses to the accident testify that they did not see the engine strike her, both state that they saw her standing between the rails, looking in the opposite direction, and that when and after thus seeing her alarm calls were given, but she remained in that position until the shadow of the tender hid her from view, but that she was observed by them there immediately before she was struck. This evidence falls short only of proving the actual collision, but it carries the narrative of fact up to that point of time when, did such instinct of self-preservation assert itself, it was too late to save her from the results of a condition in which her own negligence had placed her. Thompson v. Chicago Great Western R. Co., 162 Iowa 468, 142 N. W. 223; Stark v. Tabor & N. R. Co., 161 Iowa 393, 142 N. W. 977."

In Stark v. Tabor & N. R. Co., 161 Iowa 393, 142 N. W. 977, we said: "This presumption does not arise where there is

712

direct testimony as to the conduct of the party injured. The direct testimony covers practically every interval from the time the deceased concluded to leave his own train down to the time he was struck, and we do not think the presumption, even if it arose, as to a very short period of time, was sufficient to take the case to the jury.''

See, also, Thompson v. Chicago Great Western R. Co., 162 Iowa 468, 142 N. W. 223.

The physical facts in the instant case show that the car driven by appellant's decedent struck the rear end of the truck almost squarely in the middle, and, even though the condition of the car might be said to indicate that at the time of the collision it was turned slightly toward the left or toward the middle of the road, any effort that the driver might have made at the last moment before the collision to avoid striking the truck came too late and was of no avail, because his negligence had already placed him in a position in which the collision could not be avoided.

We find no error in the ruling directing a verdict in favor of the defendants, and the judgment of the trial court is, therefore, affirmed.—Affirmed.

KINTZINGER, C. J., and ALBERT, PARSONS, and RICHARDS, JJ., concur.