No. 11,206.

THE VICKSBURG LIQUOR AND TOBACCO COMPANY ET AL. VS. WILLIAM T. JEFFERIES ET ALS.

1. The effect of a decree approving and homologating the deliberations of a meeting of creditors granting their debtor a respite, is to create a judicial contract between the debtor and his creditors, by which the debtor is allowed a delay for the payment of the sums which he owes them, and as the debtor's property is the common pledge of his creditors, and the contract is binding on all the creditors, the law did not and could not contemplate conferring on any one creditor the right of annulling the contract without judicial process, on the ground of its alleged violation by the debtor, and applying the property to the satisfaction of his individual claims. 35 An. 917; 44 An. 823.

2. The vote of a single creditor is not a mere offer to make a new contract between the particular creditor and the debtor, but a *quasi* judicial act by which the rights of the other creditors are to be affected; the other creditors should therefore be made parties to any proceeding to annul or modify the order granting the respite. The court will *ex proprio motu* notice the want of proper parties where the judgment asked for will unavoidably and vitally affect the rights of third parties not before it. 14 An. 30; 7 La. 62.

3. A plaintiff who closes his case on insufficient evidence, relying upon supplementing it by letters then in his possession, to be offered in rebuttal to testimony which he assumes will be introduced by the defendant, can not claim as a right to reopen the case for the purpose of placing as he states all the facts before the court when the defendant is content to rest his own case on the testimony offered by the plaintiff. The action of the court on such a request rests upon the discretion of the trial judge, who properly exercised that discretion in the present instance in refusing the application.

A PPEAL from the Seventh District Court, Parish of Madison.
    *Montgomery, J.*

*Wade R. Young* for Plaintiffs and Appellants:

Several creditors, standing in the same predicament, and seeking the same relief may join in one application. Pecquet vs. Golis, 1, New Series 438.

A petition to set aside conveyances as in fraud of creditors, which joins several fraudulent grantees, who claim different portions of the debtor's property, is not subject to the objection that it is multifarious. Collins et al. vs. Stix et al., Ala., S. Rep. 380; Giraud vs. Mazier, 13 An. 147; Williams vs. Hawthorne, 14 An. 615.

The Article 1965 (1970) of the Civil Code, which provides that the action to annul a contract in fraud of the rights of creditors is to be exercised by the representatives of the creditors, when there has been a cession of property, is no longer in force, having been repealed by the act of the Legislature of 1855 Revised Statutes of 1856, pp. 256, 257, which authorizes, in express terms, the institution of such a suit by an individual creditor after the cession of property. Revised Statutes of 1870, Sec. 1807; Giraud vs. Mazier, 13 An. 147.

The judgment in this action, if maintained, shall be that the contract be avoided as to its effects on the complaining creditors, and that all the property or money taken from the original debtor's estate, by virtue thereof, or the value of such property to the amount of the debt, be applied to the payment of the debt. Civil Code, Art. 1977; State Nat. Bank vs. Monroe Cotton Press Co. et al., 39 An. 534.

An order staying proceedings rendered on an application for a respite, or a judgment homologating the contract, does not strip the lower court, which rendered it, of jurisdiction over a suit by creditors to annul it. State ex rel. Williams vs. Judge Tenth Judicial District, 42 An. 71.

Such suit is the revocatory action of the Civil Code, and not an action to annul a judgment for causes anterior to the rendition of the judgment, and all the creditors are not necessary parties to the suit.

After a respite is granted the debtor can not legally give a preference to a creditor over the rest. Fraud is presumed in a bankrupt. Brandt et als. vs. Shamburgh, 2 New Series, 329.

Articles 1986 and 1988 of the Civil Code are to be construed together, and not apply to the case of a debtor who has obtained a respite, because it would be contrary to the very condition on which that favor was accorded, namely, that all will wait the payment of their debts, such as they exist at the time the delay is granted, until a certain period has elapsed. Brandt vs. Shamburgh, 2 New Series, 330.

The defendant in the revocatory action who demands the discussion of the property belonging to the original debtor must point out and prove the existence of such property, the title to which is not in dispute. C. C., Art. 1973; Gayosa vs. Lewis, 4 La. 329.

The purchaser in bad faith will not be entitled to a restitution of the consideration, unless he proves that it enured to the benefit of the creditors, by adding to the amount applicable to the payment of their debts; but if the only consideration be a sum due from such debtor to the party with whom he contracted, then the

Liquor and Tobacco Co. et al. vs. Jefferies et als.

only restitution to be made is the placing the parties in the situation in which they were before the contract complained of was made. C. C., Art 1982; Chaffe et al. vs. Gill et al., 43 An. 1054.

Pleas by way of confession and avoidance relieve plaintiff from preliminary proof of his demand. Berry vs. Kimball, 10 An. 787

The rule that admissions can not be divided does not apply to those in the pleadings, but to answers to interrogatories. C P. 356, or Judicial Confessions under C. C. 2270; Powell vs. Graves, 14 An. 860.

The answers are a part of the pleadings, and either party may use them without formally offering them in evidence.

If the court refuses to let in evidence which has been omitted in its order by an oversight, the judgment will be reversed. Thompson on Trials, Sec. 348; Meacham vs. Moore, 59 Miss. 561; State vs. Rose, 32 An. 932; Heirs of Wood vs. Nicholls, 33 An. 745.

---

## *W. M. Murphy* for Defendants and Appellees:

The burden of proof is upon plaintiffs to make out their case, and they have no cause to complain that defendants offered no evidence, and no right to have the case reopened after they had closed, the defence having offered nothing.

Where plaintiff seeks to avoid a contract of sale, payment or preference, as made in fraud of creditors, he must allege and prove three things, viz.: fraud, knowledge of insolvency and injury to the plaintiff. 44 An. 425; Newman vs. Mahonyi 38 An. 422; C. C. 1978; 44 An. 19; Buillion vs. Creditors.

The burden is on him to prove these essentials.

The judgment homologating actions of creditors in respite or insolvent proceedings is *res adjudicata* as to all matters occurring prior to its rendition. C. C. 3092; 11 An. 36; 3 La. 217.

If the alleged payments made by the debtor benefited instead of injured plaintiffs, they have no cause for complaint. C. C. 1978.

Where acts have been declared to have been made in fraud of creditors and for that reason revoked, the parties must be placed in the same position as they were in before the contract was made. C. C. 1982, 1983.

The payment of a just debt in money can not be revoked under any circumstances, and there are no exceptions to this rule. C. C. 1986.

Actions to revoke fraudulent acts of debtor are prescribed by one year from their date. C. C. 1987; 4 R. 439.

A party does not lose his privilege by taking part in a respite proceedings. C. C. 3095; 24 An. 506.

No sale of property or other contract made in the usual course of a party's business nor any payment of a just debt in money shall be affected by virtue of any provision in this section, although the party was in insolvent circumstances, and the person with whom he contracted or to whom he made the payment knew of such insolvency. C. C. 1986.

---

The opinion of the court was delivered by

NICHOLLS, C. J. This suit is brought by five different persons, who allege that the defendant Jefferies is justly, legally and *severally* indebted to them.

They aver that in March, 1891, Jefferies filed a petition in the Madison Court, in which he surrendered all of his property to his creditors; that the court accepted the cession, appointed a provisional syndic, and ordered a meeting of creditors to be called as provided by law. That pending these proceedings in March, 1891, Jefferies abandoned the cession so made and accepted and filed his petition for a respite, and obtained from the court an order staying all proceedings against his person or property, and calling a meeting to deliberate upon the proposed delay of the payment of the sums due them. That plaintiffs were induced to believe by the representations of Jefferies that such delay would be for the interest and advantage of all parties, and would enable him to pay and satisfy his debts in full, and by such representations so made were induced to forbear from opposing the respite or to vote for it, and that a contract was duly entered into and approved by the court without opposition, by which Jefferies obtained a delay of one, two and three years for the payment of his debts, in three annual instalments, of one-third each. That in 1892, as the time for the payment of the first instalment was approaching, Jefferies again presented his petition to the court, praying that all proceedings against his person and property be stayed, and that a meeting of his creditors be called to deliberate upon a proposed change in the terms of the contract, by which the debts should become due and exigible in two annual instalments—in 1893 and 1894. That plaintiffs were again induced to believe by the representations of Jefferies that such additional delay would be for the interest and advantage of all parties, and would enable him to pay and satisfy his debts in full, and by misrepresentations so made were induced to consent to the proposed change in the terms of the contract, or to forbear from opposing it, and that the contract was duly entered into and approved by the court without opposition, by which the said Jefferies obtained the additional delay for the payment of his debts. That plaintiffs have recently and since the May term, 1892, learned that the representations so made by the said Jefferies of the condition of his affairs, and upon which their consent or forbearance was obtained, were false, and the said consent and forbearance were given in error of fact induced by the said Jefferies.

That it was represented to plaintiffs and other creditors by said Jefferies that although on account of the low prices of cotton he would

not be able to meet the instalment of one-third of the debts in May, 1892, yet he had shipped to his merchant near three hundred bales of cotton, mostly of long staple and superior quality, the proceeds of which would be more than sufficient to pay the expenses of the year, that he still retained $7000 of the stock of goods, and would be able to continue the business in good condition with a fair prospect of meeting all of his obligations at maturity. That plaintiffs have recently and since the May term, 1892, discovered that the representation of the condition of his affairs so made by the said Jefferies, and by which their consent or forbearance to the new contract was obtained, were false, and that the cottons so shipped was not of long and superior quality—that the proceeds were barely sufficient to pay the expenses of the year—that about only $3000 of the stock remained; that he had abandoned the only business from which he could hope to obtain the means of paying his debts; that his merchant of last year would not continue to furnish him, and that he could not get another, and that so far from being able to continue the business in good condition with a fair prospect of paying his debts he had consumed and wasted or otherwise disposed of the stock of goods so entrusted to him, and practically abandoned the business, with no prospect or intention to pay.

Plaintiffs further represent that Green L. Boney, agent for R. H. & J. G. Boney, and Mrs. M. P. Utz, and Mrs. Sarah E. Marshall, a resident of New York, who were named on the schedule as creditors with lessor's privilege, and voted for the respite, have conspired with Jefferies in violation of the conditions of the respite, and by fraudulent preference have obtained the payment of their debts of $1300, $840 and $500 respectively, and that Chaffe, Powell & West, of New Orleans, have been paid by Jefferies with fraudulent preference the proceeds of thirteen bales of cotton of the value of $600.

That said creditors so named as lessors voted to grant the respite and to that extent waived their privilege, and the payments so made to them by Jefferies were fraudulent and void, the said Jefferies being then insolvent to the knowledge of said payees, and were in violation of the terms of the respite. That said Chaffe, Powell & West, although no parties to the contract of respite, were creditors on the schedule, and the payment to them was equally fraudulent and void. That Mrs. Utz, although named on the schedule as a creditor with the lessor's privilege, was not in fact such creditor.

40

That by Jefferies' conduct in the premises, his false representation of facts, his waste and consumption and other disposition of the stock of goods, his mismanagement of the business and his fraudulent payments to favored creditors, the said Jefferies has violated the condition of his contract and has forfeited the respite and made it necessary for plaintiffs to invoke the process of the court or to submit to have what remains of the assets of the insolvent wasted, consumed or otherwise disposed of in fraud of their rights. That Jefferies has mortgaged, assigned or disposed of, or is about to mortgage, assign or dispose of, his property rights or credits, or some part thereof, with intent to defraud his creditors or give an unfair preference to some of them, and that he has converted, or is about to convert, his property into money or evidences of debt with intent to place it beyond the reach of his creditors.

The premises considered, the plaintiffs prayed for a writ of attachment directed to the sheriff of Madison commanding him to attach all the property, real and personal, rights and credits of W. T. Jefferies to await the further order of court. That Jefferies be cited to answer their demand, that they have judgment against him respectively for the amounts stated in the petition as being due to them severally, with recognition of the lien and privilege resulting from the attachment, and that said Green L. Boney, agent for R. H. Boney and J. G. Boney, and Mrs. Utz, be cited to answer their demand. That Mrs. Sarah E. Marshall, a *femme sole* resident of the State of New York, who owns property within the jurisdiction of the court, be cited by the attachment of the property and the appointment of a curator *ad hoc*. That the payments as stated made to them respectively, by the said W. T. Jefferies be decreed to have been fraudulent and void, and that petitioners have judgment against them severally for the said sums of $1300, $840 and $500 so paid to them respectively with interest thereon from their respective dates of payment. That the contract of respite be annulled and avoided, and the proceeds of the property attached and the sums paid by fraudulent preference, and so recovered, be applied to the payment and satisfaction of the judgment of petitioners against Jefferies *pro rata*.

On this petition the district judge ordered that a writ of attachment issue as prayed for against the said Jefferies, and the said Mrs Sarah E. Marshall, upon petitioner furnishing bond according to

law; and that A. L. Slack be appointed curator *ad hoe* to represent the absent defendant, Mrs. Marshall.

Under this order the Cabin Teel plantation and other property belonging to Mrs. Marshall were seized, but for some reason no action was ever taken against Jefferies' property.

On the 9th of November, 1892, the curator *ad hoc* filed an exception that all the parties in interest were not parties to the suit; that plaintiffs' petition disclosed no cause of action; that they had no grounds for attachment; that the demand upon which they base their action constitutes no " debt," as against Mrs. Marshall, there being no privity of contract between the plaintiffs and her and consequently no basis upon which to support an attachment; that the allegations. if true, would only disclose a case for damages as against Mrs. Marshall, and is not such an " unconditional debt " as the law requires to serve as the basis of such a proceeding as an attachment.

The defendant Jefferies filed exceptions of no cause of action, *res judicata* and estoppel.

The defendants Utz and Bonez filed exceptions of want of proper parties and discussion.

By agreement of counsel all these exceptions were referred to the merits (that of non-joinder of parties being withdrawn) and answers were then filed.

The defendant Boney pleaded first the general issue. He then admitted that he had for several years leased to Jefferies the store building where he is at present, and has for a number of years been doing business; that the building was leased by the month and the rent was payable monthly, and has always been collected by the month. He denied that he took any part in the respite proceedings, or ever by word or deed directly or indirectly agreed with any one to waive his privilege as lessor for the amounts due him, or ever in any manner agreed to grant to Jefferies an extension of time for the payment of said rent or any part thereof. He averred that he had only recently learned of the alleged respite proceedings of Jefferies and of the unauthorized acts of Wade R. Young in pretending to represent him therein—that he had never had any citation or notice of said proceedings, and that Wade R. Young had no right or authority to represent him therein, and that said proceedings and the judgments homologating same are absolutely null and void, and without effect as to him. That as lessor of said property he in good faith

received the sums due on said lease at the end of each month, and would not under any circumstances have jeopardized his rights by waiving his lessor's privilege or by granting an extension of time to his said debtor, and he is not guilty of any fraud or bad faith to plaintiffs or to any of Jefferies' creditors. That the lease of said premises enured to the benefit of Jefferies and to plaintiffs, and to all the creditors of Jefferies, and to plaintiffs during the whole time of said lease and the present continuation thereof, because respondent would not have allowed said lease to run without the payment of same monthly, and had respondent terminated said lease the business of Jefferies would have [been ruined and the interests of his creditors would have suffered greatly, and therefore said complaining creditors have no just cause of complaint against respondent by reason of said transactions.

That if the court should hold that the payments made by Jefferies to respondent should be rescinded, and the parties placed in the same situation as before said payments were made, then respondent demanded his lessor's privilege upon the property of Jefferies be recognized and reserved to him for the amount of all said payments, that he have judgment against Jefferies accordingly for said sum. That Jefferies is not insolvent, but has ample property with which to pay the claims of all his creditors, and especially those of plaintiffs; that he owns the goods in the store where he is now doing business, worth $10,000, together with live stock, open accounts and other property worth a great deal more, liable under execution, and which property should be discussed in any event before judgment could be rendered against respondent, and should the court consider this action against respondent entitled to serious consideration, then respondent claimed the benefit of a previous discussion of said property by plaintiffs before considering the question of respondent's liability.

That the claims sued on are not real claims against respondent, or Jefferies, and he denied their existence; but if valid they are not yet due, and that plaintiffs can not recover judgment thereon until they become due.

The defendant Mrs. Utz, first pleaded the general issue, next admitted that she leased a store building and dwelling to Jefferies from March, 1891, to April, 1892, by the month, at a monthly rental of $60, payable monthly, and received said rental monthly in cash at the end of each month; and then at the close of the answer made allegations and took positions identical with those of Boney.

Mrs. Marshall's answer was a repetition of her exceptions, coupled with the general issue and a special denial that she had ever received any payment from Jefferies.

Jefferies himself pleaded the general issue, next averred that plaintiffs' demands are not yet due, and that the action is premature. He further averred that he had carried out in good faith all the agreements, stipulations and conditions of the respite and extensions granted by the creditors, and that all his acts in the premises have been done with the full knowledge, advice and consent of his creditors and of the plaintiffs.

The case having gone to trial, plaintiffs opened their case, introduced their evidence and rested, whereupon defendants declared they also rested. The plaintiffs, alleging surprise at the failure of the defendants to introduce any rebutting testimony, moved the court to "reopen the case for the purpose of getting all the facts before the court." This motion was overruled and the plaintiffs reserved a bill of exceptions, to which bill (with the leave of the court) were annexed certain letters of the defendant Jefferies which the plaintiffs had intended to have offered in evidence had their motion to reopen been granted.

On the 14th November the court rendered a judgment in favor of Jefferies, Boney and Mrs. Utz against the plaintiffs rejecting their demand, and in favor of Mrs. Marshall against the plaintiffs rejecting their demands as in case of non-suit, with reservation of her rights to proceed against the plaintiffs and their sureties upon the attachment bond. The plaintiffs have appealed.

In March, 1891, the defendant Jefferies obtained from his creditors in the District Court for Madison parish a respite for one, two and three years. Before the termed fixed for the payment of the first instalment of his debts had been reached he applied for and obtained an order for a meeting of the creditors to deliberate upon granting him a change in the terms of the respite, so as to authorize him to make the payments in two equal instalments, payable in 1893 and 1894. The meeting was held; the creditors acceded to the request and (according to plaintiffs' allegations) the "contract" to that effect was "duly entered into and approved by the court." Plaintiffs alleging that they were induced to enter into said contract by the misrepresentations of Jefferies, and that since the respite was granted he had violated the conditions by making premature pay-

ments to three designated creditors, giving to those particular cred-
itors an illegal preference over them, have united in a suit, in
which they pray for an attachment against Jefferies' property, for
citation to him and the three creditors so alleged to have been
illegally paid, and contradictorily with those parties, for a judg-
ment annulling and setting aside the order for a respite and the
payments to those particular designated creditors, for judgment
in favor of each of them against Jefferies for the amount of their
respective claims, and for the application pro rata among themselves
of the property attached, and the moneys ordered to be returned as
resulting from the setting aside of the payments alleged to have
been improperly made.   This suit is not brought, if we may so express
ourselves, inside of the respite proceedings, but as an independent
separate suit between the particular creditors plaintiffs and
Jefferies and the particular creditors defendants. This action was
doubtless based upon the idea that when the order for the respite
was granted and approved by the court, the proceeding terminated,
and with it the jurisdiction of the District Court over the subject
matter ended.

The demand is obviously predicated upon the theory that the
"contract" which the plaintiffs speak of, was a separate several con-
tract between Jefferies and each of his creditors individually, for the
other creditors placed on the schedule, and who were either actually
or constructively parties to the respite proceedings, have been
ignored by the plaintiffs and were not made parties in the court
below, nor are they parties before us.

The plaintiffs are mistaken in this view of the situation.  The very
motive and object of bringing the creditors together was, through
the vote taken at the meeting, to bring about a result binding on
each and all, and in the supposed interest of the mass of creditors.
As said in Morgan vs. Nye, 14 An. 30, the vote of a single creditor
is not a mere offer to make a new contract between the creditor and
debtor, but a *quasi* judicial act, by which the rights of the other
creditors are to be affected.

In Anderson vs. Duson, 35 An. 917, this court, speaking of the
order of respite, said:  "The effect of the judgment is to create a
judicial contract between the debtor and all his creditors by which
the debtor is allowed a delay for the payment of the sums which he
owes them.  *  *  *  As the debtor's property is the common

Liquor and Tobacco Co. et al. vs. Jefferies et als.

pledge of his creditors and the contract is binding on all the creditors the law did not and could not contemplate to confer on any one creditor the right of annulling the contract without judicial process on the ground of its alleged violation by the debtor, and to proceed to apply the property thus restored to the possession of the debtor to the satisfaction of his individual debts."

In thus stating the necessity of judicial action in order to bring about an annulment of the order the court was not called upon to express, nor did it express, any opinion as to the character of such judicial proceedings, the persons who should be made parties to them, nor the nature, character and extent of the relief which could be asked and granted on showing the debtor had violated his obligations.

If it be granted that all the creditors were parties to the contract and interested in being heard as to its annulment and the consequences to result from such annulment, or as to its modification in any manner, it would seem that the same rules which govern ordinary contracts should be applied to this and that they should be afforded an opportunity to be heard and their interests consulted before any change should be made. The debtor does not stand as a syndic does, as the representative of the mass of creditors.

We are of the opinion that the granting of the respite and its approval by the court gave all the creditors rights which could not be ignored, and that the original status of the debtor and his property could not be restored at the instance of one or more creditors so as to remove in their individual favor the injunction (barring them from proceeding against the debtor and his property) which resulted from the respite and thus enable them to attach, seize and apply that property to their special personal benefit. The inequity of such a proceeding is manifest, and was not only referred to in Anderson vs. Duson, but in Mitchell vs. Dalton, 44 An. 823.

If the original situation could be returned to at all, and particularly at the instance of one or more creditors, the proceeding would have to be carried on contradictorily with all the creditors whose rights would unavoidably have to be affected. Morgan vs. His Creditors, 7 La. 62.

While we do not express any decided opinion upon the matter, it certainly admits of a very serious doubt as to whether matters could legally be thus made to go back to the original position, and whether

the only proper and legal course to be pursued should the debtor violate the terms of the respite, and the order of respite be set aside, would not be to force him into a cession of his property for the common benefit of all concerned.

Whilst in the case at bar the defendant Jefferies filed no exception for the want of proper parties, and the other defendants who did do so expressly waived them, the court is bound to notice *ex proprio motu* that no judgment could be rendered in this cause which would not unavoidably and vitally affect the rights of third parties who are not before it. We have on repeated occasions declared that we could render no decree under such circumstances.

Plaintiffs do not appear before us asking conservatory process in the interest of the mass of creditors nor for a cession of the property in that same interest, but they are seeking to undo, and, by undoing, make to enure to their separate advantage a judicial order, based upon the joint and concurrent consent of themselves and others, upon the faith of which the others are resting in full supposed security. This they can not be permitted to do.

Independently of these considerations the judgment of the District Court was correct on the facts as placed before it.

Plaintiffs closed their case upon insufficient evidence, relying upon supplementing it by way of rebuttal to that which would be offered by the defendants.

The defendants having offered no testimony plaintiffs moved the court to reopen the case " so as to place all the facts before it." This the court refused to allow. In so ruling, the court exercised, in our opinion, a proper discretion.

For the reasons herein assigned, it is hereby ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby affirmed.

Rehearing refused.