No. 4152

Second Circuit

LANSING ET AL. v. MILLER ET AL.

(March 16, 1932. Opinion and Decree.)

Harold W. Hill, of Alexandria, attorney for plaintiffs, appellants.

White, Holloman & White, of Alexandria, and Jess Johnson, of Baton Rouge, attorneys for defendants, appellees.

McGREGOR, J. During the week beginning April 7, 1930, a show or carnival aggregation under the name of "Ralph R. Miller Shows" was set up in the city of Alexandria for the purpose of furnishing amusement and entertainment to the public. On Tuesday, April 8, 1930, at about 6 o'clock p. m., while the plaintiffs were sitting down to supper in the dining room at their home, a bag filled with sand fell upon the roof of their house, making a loud noise. Almost at the same time a balloon also fell upon the same roof. The noise of the two objects falling in quick succession upon plaintiffs' house was very similar to that of an explosion. The plaintiffs were naturally excited and ran quickly to the front of the house and into the yard to discover what had happened. It was found that the sand bag had been broken by the fall and that sand was scattered over the roof of the building and on the front porch. The black, sooty, collapsed bag of the balloon was on the roof. Several of the asbestos shingles of the roof were broken and the entire building was besmirched with soot. The home was new and modern and built of brick, and was naturally the pride of the plaintiff, Mrs. Lansing. Seeing her beautiful new home thus covered with soot and finding that it could not be cleaned and that its beauty was permanently marred, she was naturally upset and suffered a nervous collapse.

In connection with the amusement and entertainment furnished by "Ralph R. Miller Shows" there was a balloon ascension and a parachute jump each afternoon or evening. As soon as the parachute jumper left the balloon it was so arranged that a bag filled with sand would cause it to become unbalanced and to turn over and permit the inflating gas to escape, with the result that the sand bag and balloon would quickly descend to the ground almost immediately at the spot where the parachute jumper had left it.

Knowing that there was such a balloon ascension scheduled by "Ralph R. Miller Shows" the plaintiffs naturally presumed that that was where the balloon and sand bag came from, and so this suit was brought by them against Ralph R. Miller as owner of the show, setting up the above facts. Damages were asked in the name of the husband, Evan E. Lansing, in the sum of $250 on account of the injury done to the house, and for $500 in the name of the wife, Mrs. Dixie Lansing, for personal injury sustained by her on account of the happening.

In their petition the plaintiffs alleged that the balloon act was put on by the defendant under the direction and management of one Dr. O'Brien, employee and manager of the show. The defendant answered plaintiffs' petition and denied practically every allegation contained in it. He specially denied being the owner of the show and alleged that his wife, Mrs. Cleta Parker Miller, was the owner of it as her separate paraphernal property and that his only connection with it was as agent of his wife in the management and operation of the property. It was also specially denied that the defendant or his wife owned a balloon or sent one up in connection with the show. It was admitted that on the day and at about the time alleged in plaintiffs' petition a balloon did ascend from the grounds of "Ralph R.

Miller Shows," but it was denied that it was sent up by Dr. O'Brien or that the show had any connection with the flight. It is admitted that a balloon flight was advertised to take place in connection with the show at the given time. Answering further, the defendant alleged that his wife, Mrs. Cleta Parker Miller, purchased with her own paraphernal funds a merry-go-round, a ferris wheel and a chair plane, and that no other appliances belonged to her but that, as is usual and customary, owners of side-shows, carnivals, concessions, games, concerts and other attractions set up their respective appliances and stands in close proximity to those of his wife. All licenses, advertising, lights and power are furnished by Mrs. Miller, and for these she received certain fees and commissions. With reference to the balloon flights, it was alleged as follows:

"That the said Mrs. Cleta Parker Miller, through respondent as agent, contracted with one R. L. Coty to make a certain number of balloon flights, one each date, in a balloon which was owned and operated entirely by the said Coty. For these flights the said Coty received a specified consideration. The said Coty owned his own balloon, he owned his own transportation, he employed his own labor and equipment and went about making these flights in his own way and without any control or management whatever on the part of Mrs. Cleta Parker Miller or her agent. The said Coty advertised by signs painted on his truck and automobile and otherwise that he was a 'professional balloon rider.' He contracted with show people, real estate promoters to promote the sale of lots in subdivisions and otherwise and with anyone who may desire to draw crowds to certain localities for various purposes. The said Coty operated his balloon for the 'Ralph R. Miller Shows' entirely as an independent contractor."

After the defendant Ralph R. Miller filed his answer denying the ownership of the show bearing his name, the plaintiffs amended their petition and made Mrs. Cleta Parker Miller a party defendant, renewing all the allegations of their former petition, and asked judgment against her and Ralph R. Miller, her husband, in solido, on the ground that he had held himself out as owner of the show. This supplemental petition was answered jointly by the two defendants in practically the same words as the original petition was answered.

It was on April 8, 1930, that the incident on which this suit is based occurred. The first petition was filed May 1, following, and the answer of the defendant was filed on June 24, 1930. The supplemental petition was filed on October 1, 1930, and this was answered on November 5, following. The case was set for trial on three different occasions and was finally reached, taken up and tried on March 23, 1931, nearly one year after it was first filed.

At the trial all the evidence was directed toward the proof of the falling of the balloon and sand bag upon the house, the damage done to the house and the effect of the occurrence upon the physical condition of the plaintiff, Mrs. Lansing. Not a word of testimony was introduced to show any connection between the balloon and the defendants. For aught that the testimony shows, this balloon may have come from a great distance and may not have ascended from the defendants' show grounds. It is true that in the defendants' answer it is admitted that on the day and date and about the time that plaintiffs allege that a balloon fell upon their home, a balloon did ascend from the show grounds, but they specially deny that it

was owned by either of the defendants or that it was sent up by them or by any of their agents or employees. The plaintiffs closed their case with the evidence in this shape. Seeing that no testimony had been introduced that in any manner even remotely connected the defendants with the balloon and sand bag described by the plaintiffs, counsel for defendants declined to introduce any testimony and submitted the case. There was judgment for the defendants and the plaintiffs' demands were rejected, and their suit was dismissed. Counsel for plaintiffs filed a motion for a new trial based on the allegation that the judgment was contrary to the law and the evidence. No particular was set out in which the judgment was wrong. This motion was overruled, the formal judgment was then signed in accordance with the finding of the court, and the plaintiffs appealed.

In his brief counsel for plaintiffs states:

"On the trial of the case in the lower court, as the record indicates, plaintiffs introduced ample evidence to sustain their claim for damages, but due to misapprehension on the part of counsel for plaintiffs, **failed to introduce evidence to show that the balloon in question ascended from the grounds of the Ralph R. Miller Shows, or was the property of defendants, or under their control.** This misapprehension on the part of plaintiffs' counsel was due to the fact that counsel misread the answers of defendants and was under the **impression that the answers admitted the ownership of the balloon and the ascension of the same on the day complained of.** Such being the case, plaintiffs' counsel closed his case without placing either of the defendants on the stand as under cross examination expecting to cover that part of the ·evidence on cross examination of these witnesses when placed on the stand by the defendants. Defendants' counsel, realizing plaintiffs' error, upon close of plaintiffs'

case, directed the ·attention of the trial judge to the failure of the plaintiffs to offer evidence connecting the balloon with defendants, and as a result thereof, the trial judge rendered judgment rejecting plaintiffs' demands.

"Counsel for plaintiffs then filed a motion for a new trial, setting forth as a reason therefor that the judgment thus rendered was contrary to the law and the evidence in that a judgment of absolute rejection of plaintiffs' demands under the circumstances was erroneous, and that the judgment, if against plaintiffs, should have been one of non-suit and not such a judgment as to entirely cut off plaintiffs from their rights to prosecute this action against these defendants. The trial judge refused to grant the motion for a new trial and plaintiffs lodged this appeal." (Bold type ours.)

This quotation from plaintiffs' brief states clearly their position before this court. It plainly states and admits that no evidence was introduced to show that the balloon in question either ascended from the show grounds or was the property of the defendants or under their control. The only explanation given for the failure to introduce such testimony is that plaintiffs' counsel misread the answers of defendants and was under the impression that they admitted the ownership of the balloon and its ascension on the occasion complained of. It is inconceivable to us that any one could so misread these answers as to get such an impression therefrom. On the contrary, the very opposite is true. Defendants admitted that a balloon did ascend from the show grounds on that date, but they deny that it was the one that did the damage complained of and denied owning it or having any control thereof. In fact, the burden of the defense is that every matter alleged in the two petitions is denied outright and that the

outstanding contention is that the balloon was owned and operated by an independent contractor in such a manner as to free defendants from all liability for any accidents that might happen in connection therewith.

So, when the plaintiffs failed to introduce any testimony whatever on these most material points in the case, it was not necessary for the defendants to offer any testimony at all. The trial judge rendered the only possible judgment under the circumstances. Counsel had ample opportunity before the trial to read the pleadings correctly and to get a correct view thereof. The defendants were both present in court and could have been called for cross-examination before the plaintiffs closed their case. They would not have to wait until these defendants were on the stand as witnesses in their own behalf. They could have called them at any time. In fact, the plaintiffs should not have postponed making out any important feature of their case to the time when the case would be with the defendants. We feel sure that, if, as soon as he saw that defendants were going to close their case without introducing any testimony, counsel had asked permission to reopen the case for the purpose of cross-examination of the defendants in order to prove an important point that he had overlooked up to that time, the trial judge would have granted the request without question. This would have been the exercise of a discretion wisely vested in the trial judge. But we fail to see where the court should be required to grant a new trial on these grounds. Counsel says that:

"All the jurisprudence of Louisiana is in accord with the contention of plaintiffs that where there is a failure on the part of plaintiff to introduce sufficient evidence to prove his case that a judgment of non-suit should be entered."

We cannot subscribe to this doctrine. If this were true a non-suit should be entered in practically all suits that the plaintiffs fail to win, and there would never be any end to litigation except when the plaintiff wins. The equities in this matter are just as strong in favor of the defendants as they are for the plaintiffs. The defendants were present in court with all their witnesses ready to answer the demands of the plaintiffs. They all live at different places. It would be a great injustice, even an impossibility, to require them to reassemble for the purpose of another trial, especially when no fault or blame can be ascribed to them or their counsel. The defense was couched in as strong and plain language as could be used. If the language used were ambiguous and if there were any real grounds for misapprehension as to the meaning of the same, or if the defendants had misled the plaintiffs in any manner through their pleadings, we would not hesitate to grant the relief sought, but under the facts of the case as we see them we would not be justified in holding that the trial judge has erred in the exercise of the discretion vested in him by law.

For the reasons assigned, the judgment appealed from is affirmed, the plaintiffs and appellants to pay all the costs of both courts.