Plaintiff suffered serious physical injuries from a collision between his two door Dodge automobile and a stationary United States army command car owned by Charles Milby Dow, a resident of the City of Houston, Texas, who is engaged in the business of buying and selling motor vehicles under the trade name of "Dow Motor Company". The accident occurred at about the hour of 7:00 o'clock P.M., January 29, 1945, on state highway No. 165, two miles south of the Village of Glenmora, in Rapides Parish, Louisiana.
Plaintiff, accompanied by his wife and adult son, William, left his home in Northport, Alabama, in the Dodge car, early in the morning of the day of the accident, and reached the City of Alexandria, Louisiana, about the hour of 5:45 P.M. There the plaintiff relieved his son as driver and was at the wheel when the accident occurred. The party was enroute to Port Arthur, Texas, to visit with a married daughter.
Defendant, through a representative, on the day of the accident, purchased several motor vehicles (trucks and cars) from the Government. Several of his employees had driven to Camp Claiborne, where the vehicles were located, and were taking them to Houston, Texas. This was done in units of two vehicles. The front bumper of one was attached to the rear bumper of another so securely that there could not be lateral movement of the rear one.
The party came over in the command car involved in the accident, and on account of the poor condition of its fabric top, this car was attached, bumper to bumper, to one of the purchased trucks that was being driven by an employee named Louis Peska. This unit was the most northerly of the convoy. The unit immediately in advance of Peska's was in charge of a Negro man named Hawkins. It consisted of two trucks. Some trouble developed in the mechanism of the front truck of this unit and it was driven entirely onto the west shoulder of the road, twelve feet wide, and stopped to await the arrival of Peska's unit. Peska is an automobile mechanic and had provided himself with tools to do repair work should need therefor arise. He observed the parked unit in front of him and drove to within about six inches of it and stopped. The truck occupied by him was driven at an angle entirely off of the pavement but the rear wheel of the command car rested three feet or more from its western edge. Peska got out of the truck and proceeded along the west shoulder to see what had happened to the Hawkins unit. On being informed of the nature of the trouble, he returned to his own vehicle and as he was climbing upon the seat, with the intention of backing up and then going forward to park in front of the Hawkins unit, the right front end of plaintiff's car ran into the left rear corner of the command car and from this collision this law-suit arose.
Plaintiff alleged that he was driving at a speed of less than thirty-five miles per hour when suddenly blinded by the lights of an approaching automobile going north on said highway; that he then dimmed his own headlights and reduced the speed of his vehicle, but the other driver did not dim his lights and in spite of these precautions he crashed into the command car, the rear end of which blocked all or nearly all of his side of the road; that as soon as he observed the command car in front of him he tried to avert the accident by applying the brakes and swerving to his left. He further alleged that when the accident occurred a light rain was falling and that the command car was camouflaged, due to it having been originally painted olivedrab; that because of its color the car could not, under conditions then prevailing, be seen by the use of ordinary care and vigilance.
Plaintiff's action is predicated upon several instances of negligence accredited to defendant's agent and employee, Peska, including the following:
That the car was stopped with a portion of it on and over the main paved part of the highway in violation of Rule 15 of Section 3 of Act 286 of 1938; that said vehicle was parked without lights or reflectors of any kind or character to apprise *Page 753 
traffic from the north of its presence and position; that no flares were placed on the highway, above and below said unit, as required by law, in order to give notice that part of the paved portion of the road was occupied by it.
Plaintiff alleged that said Dow Motor Company is either a corporation or a partnership; and if the former, the names of the members thereof are unknown to him. Service on the Secretary of State, as provided by Act 184 of 1932, was prayed for, and accordingly made.
Following the overruling of exceptions of no cause and no right of action, defendant answered. The answer is in the name of the Dow Motor Company; and as to legal entity it averred that it is neither a corporation nor a partnership, but an individual doing business under the trade name of "Dow Motor Company". The name of the individual was not disclosed in the answer.
Defendant alleged that notwithstanding plaintiff's charges relative thereto to the contrary, the headlights of the command car, as well as its two tail lights, were burning brightly immediately prior to and at the time of the accident, and in addition, as further notice of its presence, to motorists approaching from the north, there were on the rear end of this car two four-inch circular red reflectors that were then normally functioning. Further answering, defendant accredits the accident solely to the negligence and carelessness of plaintiff in that he was driving recklessly on a wet highway at a time when it was dark, raining, and visibility poor; that by the exercise of ordinary care and alertness he should have seen defendant's car in time to avert running into it; that if plaintiff's vision was impaired by the bright lights of an oncoming car, as he alleged, and by atmospheric conditions then prevailing, he was grossly negligent in not bringing his car to a complete stop or reducing its speed to the extent and bringing it under such control, that he could have instantly stopped it in the event conditions suddenly developed that would make such action necessary.
In the alternative, the above mentioned acts of negligence on plaintiff's part are pleaded in bar of recovery by him, should the court find and hold defendant to have been negligent in any respect as a contributing cause of the accident.
The trial judge gave judgment for the plaintiff, and assigned lengthy written reasons to support it. After rendition of judgment but before same was signed, the plaintiff by petition moved to have the case re-opened in order to allow him opportunity to prove, as he had overlooked doing theretofore, that Charles Milby Dow was the sole owner of the Dow Motor Company as such ownership had not been expressly admitted in defendant's answer.
A rule issued which ordered the defendant to show cause why the case should not be reopened "for the purpose of taking testimony to determine the name of the individual doing business as Dow Motor Company". Service of the rule was made on the attorneys of record of this company.
Defendant vigorously opposed the application to re-open on several grounds, viz: that it came too late after the case had been tried and judgment rendered against the named defendant; that there is no law, statutory or otherwise, to warrant re-opening a case for a new trial thereof, and to adduce testimony to change, alter, amend or contradict the allegations of the petition or answer either by substitution or adding the name of any person or individual as a party defendant therein, or otherwise; that service herein was made on the Secretary of State under a statute (Act 86 of 1928, as amended by Act 184 of 1932) authorizing such procedure on the theory that the Dow Motor Company was either a corporation or a partnership; that, in fact, it is neither, nor is it a legal entity, and for this reason the service attempted herein is invalid and of no effect; that to designate said Dow as a defendant and to include his name in the judgment as being the or a party condemned, would be without legal service and citation under the laws of Louisiana, and in violation of the due process provisions of the Constitutions of the United States and of this State.
Defendant in his answer to said rule, also excepted to the application to re-open *Page 754 
on the grounds that it disclosed neither a cause nor a right of action.
The court sustained plaintiff's contentions with respect to re-opening the case. Thereafter, he filed an amended petition wherein it is alleged that the defendant herein, Charles Milby Dow, is doing business under the trade name of Dow Motor Company, and who is in reality the sole owner of the business carried on in that name. Testimony taken by depositions amply supports the contention of the plaintiff in this respect. On rule to show cause why this testimony should not be admitted, the Dow Motor Company, through its counsel, of record, but not for Dow, excepted to the rule on the ground that the court is without jurisdiction ratione personæ to substitute said Charles Milby Dow, a non-resident, as party defendant in the case, or to render any judgment against him since the suit was not instituted against him, no citation was issued to him, and he has not been served individually or through the Secretary of State to appear and answer plaintiff's demand; and again he charges that to sustain plaintiff's position herein and condemn the said Dow for damages sought, would be in violation of the due process provisions of the Constitutions of the United States and of this State. U.S. Const. Amend. 14; Const.1921, art. 1, § 2.
Admissibility of the mentioned testimony was further objected to by Dow Motor Company on the ground that same is not responsive to any of the allegations of the petition, is immaterial, irrelevant, incompetent, and is offered to enlarge the pleadings and substitute a party defendant who was not made so originally.
The court ruled that the proffered testimony was admissible under the allegations of the amended petition, and then signed judgment against "Charles Milby Dow, doing business as the Dow Motor Company", condemning him to pay to the plaintiff the sum of $15,121.90. Suspensive appeal was perfected by Dow and also by the Dow Motor Company.
As we study this record, the pleadings become more and more interesting. They are unique in that although it is seriously argued and contended that the Dow Motor Company is not a legal entity, has no standing in court as a defendant, and that the service of process herein is invalid and without effect, as against Dow, yet he has in such company a champion who has left no stone unturned to protect him against having to respond for payment under the judgment so vigorously attacked.
[1] Defendant erroneously likens the application to re-open a case for a restricted purpose to a motion for a new trial, and his counsel forcefully argues this proposition. But the premise being not well founded, the argument of necessity loses much of its potency. He argues that a new trial is available only to those persons who are aggrieved by the judgment. The Code of Practice provides that judgments may be revised in four different ways, one of which is by new trial, and prescribes the grounds on and manner and method by which an aggrieved litigant may avail himself of the same. Code of Practice, Articles Nos. 556-563. These articles do not, strictly speaking, control in applications to re-open. Nowhere in this Code, nor elsewhere, do we find any express law that authorizes the re-opening of a case after trial, in order to supply, in a restricted way, evidence appropriate to the ends of justice. However, the practice of re-opening cases for limited purposes is now and has been for a long time well recognized by the courts of this state. Pertinent to this discussion is Code of Practice, Article No. 484, which reads:
"After all incidental questions shall have been decided, and both parties have produced their respective evidence, the argument commences; no witness then can be heard, nor proof introduced except with the consent of all the parties."
Defendant relies heavily upon this article and if it stood alone it would afford much comfort to him, but the strictness of the rule therein announced has been materially modified by repeated rulings of the Supreme Court. In Succession of Lefort,139 La. 51, 68, 71 So. 215, 220, Ann.Cas. 1917E, 769, the court, after quoting this article, said:
"This article has been interpreted to mean that, after all parties have announced *Page 755 
that the testimony is closed, neither party has a legal right to introduce further evidence, but that the privilege of doing so may be granted by the court in its discretion and in furtherance of justice. The judgment of the court refusing to admit further evidence will not be reversed by this court unless it is manifestly erroneous and productive of injustice. See Vicksburg Liquor Tobacco Co. v. Jefferies, 45 La. Ann. 621, 632, 12 So. 743; State v. Chandler, 36 La. Ann. 177, and School Board of Union Parish v. Trimble, 33 La. Ann. 1073, 1079."
[2, 3] It may truly be said that applications of the character under discussion address themselves to the sound discretion of the court and when sustained, its action will not be disturbed by an appellate court unless it manifestly appears that harmful results or injustice will follow. In the present case it is obvious that by granting the application to re-open no harm or injustice was done.
But appellant vigorously argues that regardless of the general rule above discussed, after a case has been tried, submitted and judgment therein rendered, the door is closed to its further consideration by the trial court, except after a new trial or rehearing timely applied for has been granted; such application to be in proper form and supported by proper basis. He cites Lansing et al. v. Miller, 19 La. App. 257, 140 So. 79 to sustain this position. The question tendered in the application to reopen in that case is quite different from that now before us. In that case, to fasten liability on the defendant for the damage caused by the falling of a deflated balloon, depended upon ownership and control of the balloon at the time it ascended and fell. Ownership in the defendant was not admitted in answer and inadvertently was not proven on trial by the plaintiff. Judgment of necessity went for the defendant after which a new trial was applied for on the ground that plaintiff's counsel was misled by the answer into believing that ownership and control of the balloon were not controverted issues in the case, and, therefore, introduced no proof to establish these very material facts. It was contended that because of this situation the judgment should have been one of non-suit instead of the rejection of the demand. This contention was rejected by the lower court for the reason that the answer clearly put at issue the question of ownership and control of the offending balloon. On appeal to this court the judgment was affirmed. This ruling, in our opinion, should not have any influence in the present case for the primary reason, among others, as we shall hereinafter endeavor to demonstrate, it was not imperatively necessary to the effectiveness of the judgment as against Dow, that ownership of the business conducted under the trade name "Dow Motor Company" be established prior to signing of judgment. Conversely, in the Lansing case, supra, proof of ownership and control of the balloon at the time of its ascension and falling was absolutely necessary to the success of plaintiff's case.
[4-6] The adoption of a trade name by one engaged in business is not only lawful but common practice. It is to be condemned only when done to cover up fraud or other illegal practices. While we have not found nor have we been cited to a Louisiana case wherein the question was tendered, the right to sue in a trade name and the corollary right of others to sue one doing business in such name, is well recognized and established in other jurisdictions. 47 Corpus Juris, §§ 321, 469, verbo "Parties". Surely, recognition of such rights is free of reasonable objection. It is entirely conceivable that in a given case the identity of the one who owns the business conducted in a trade name could not be timely ascertained for a creditor to protect himself against the fraudulent acts of the unknown and undisclosed owner. We know that it is common practice to ask for judgment not only against the alleged owner of a business carried on in a trade name, but also against the trade name itself. Property of the owner, whether standing in his individual name or in the trade name, is subject to execution under-judgment against either or both.
To illustrate and emphasize this line of reasoning, suppose John Doe assumed the name of John Roe, and under this assumed *Page 756 
name he transacts business and incurs obligations in a place where his true name is not known, and he is sued. Judgment is rendered against John Roe. In these circumstances no one would argue that property owned by and standing in the name of John Doe would not be subject to seizure and sale to satisfy the judgment against John Roe. In the suit of Clemmens v. Washington Park Steamboat Company, C. C., 171 F. 168, the court, after attempt to collect judgment, allowed the introduction of testimony to prove that the defendant was only a trade name under which the Gloucester Ferry Company, a corporation, did business. The court, in passing, very properly held that to permit introduction of said evidence would not have the effect of substituting another person as defendant, but did have the effect of establishing the identity of the true defendant. Of course, it follows by implication, if not expressly so stated, that such evidence would not have the effect of altering or changing the judgment in any material respect.
[7, 8] It is our view of the applicable law that any service of process adequate to bring the Dow Motor Company into court and confer jurisdiction ratione personæ upon it, has like effect as to Dow, since he and the trade name, so as concerns this suit, are identical. Evidently Dow had knowledge of the filing of the suit and of the service of process on the Secretary of State, because able counsel was promptly employed and that counsel unreservedly came into court and answered the petition in the trade name. Such an appearance being general, waived every legal objection to the validity of citation and service and to the jurisdiction of the court not only as to the trade name but also to Dow. Article 93 of the Code of Practice. Stanley v. Jones, 197 La. 627, 2 So.2d 45.
 The Merits
Plaintiff, while admitting that his car's headlights illumined the highway for between fifty-five and seventy-five feet, excuses himself on three different grounds, for not seeing the command car, to-wit:
1. That there were no lights on the rear end of the command car nor visible reflectors and that flares, as required by law, were not placed north of the unit to give notice of its presence;
2. That the color of the command car was olive drab which made it difficult to see;
3. That the corner of the car, being near the edge of the pavement, coupled with reasons Nos. 1 and 2, above, prevented him and others in his car from learning that their lane of travel was partially blocked until too late to avert the accident.
Considerable testimony was introduced to prove the color of the command car. Plaintiff's witnesses all say it was olive drab, the color the Government adopted for its vehicles during the last war, and for obvious purposes; while defendant introduced several witnesses and some documentary proof in the effort to establish that the car had recently been repainted gray. In this connection, however, it makes not a great deal of difference which contention is correct. Both colors reduce the ability of a motorist at night to detect the presence of a vehicle so painted, and both colors, in a measure, blend with the color of the pavement.
[9] Without summarizing the testimony bearing thereon, we hold that it preponderates in favor of plaintiff's contention that the rear lights of the command car were not burning when the accident occurred, and that the two reflectors thereon were not then functioning. They were intact but evidently were covered with mud, dust or gravel that prevented reflection when shone upon by the lights of a nearby car. So far as concerns the headlights of the command car, whether burning or not, is immaterial as they were focused against the rear of the front vehicle, and could not have been seen by a motorist coming from the north. But, as these lights were attached to the same wiring system that carried current to the rear lights, if the latter were not burning, of course, the former were not.
[10, 11] Peska admits that he did not put out flares when he stopped his unit. We opine that under the circumstances, few drivers would have done so, but the law on the subject is mandatory. Defendant contends that the law (Dart's Stat. 5309.5, Act No. 215 of 1942, § 2) has no application to *Page 757 
the facts of this case, but we construe the law differently. The law includes motor busses, cars for hire, having a capacity of over seven passengers, cars or trucks used as wreckers or for towing purposes, etc. The fact that the truck was being temporarily used for towing purposes does not remove it from the law's operative effect.
[12] The trial judge, after narrating the facts with respect to the lights, parking of the unit, etc., made the following finding, to-wit:
"I think this record clearly establishes that the defendant's employee was negligent in parking his vehicle on a dark night, in the rain, improperly lighted in such a manner as to obstruct a part of the highway where it was assumed that others would be traveling. It was also in violation of the highway Regulatory Act of 1938, Rule 15, Section 3, (Act 286 of 1938). Sexton v. Stiles, 15 La. App. 148, 130 So. 821." We fully concur in this conclusion.
Touching the charge of contributory negligence, the lower court found and we concur therein, that plaintiff was not driving at an excessive speed, all things considered, immediately prior to the collision. The court then made the following observations and conclusions, which we adopt, to-wit:
"Undoubtedly the rear end of the command car occupied approximately three feet of the concrete driveway. The picture of the Dodge car is in the record and it shows that its right front light and right fender struck the command car. The major damage to the car was on its right side. This indicates to me that the command car was parked in the highway at just such a distance that it would be scarcely observed by the plaintiff but sufficiently in the highway to engage the right portion of the plaintiff's automobile. In looking down the highway the plaintiff could undoubtedly see past the parked command car and for that reason I think this case would present a different situation had the command car been parked entirely on the concrete slab.
"Under these facts and circumstances was the plaintiff in any wise negligent or was he exercising such a look-out, alertness and maintaining such speed and control of his car as one would expect of a reasonably careful driver? It is my opinion that he was not negligent. He could not have been expected under these facts and circumstances to have seen the command car and avoided the accident. If the law requires more it is against the experience of life and asks too much of a human being. In my opinion, he was operating as the average, careful driver who drives the highway. The accident was due to the negligence of Mr. Peska who parked in the highway."
[13] The effect of the court's conclusions, in which we agree, is to constitute this case an exception to the general rule that a motorist must see or will be held to have seen all objects sufficiently large to interfere with traffic on his side of the highway, within the distance well illumined by the lights of his car; and that he will be excused for not having seen such object unless the failure be due to lack of care and vigilance, in the determination of which, all physical, atmospheric and other pertinent conditions should be given proper weight and consideration. The case, as we view it, falls squarely within the doctrine announced in Gaiennie v. Cooperative Produce Company, Inc., et al., 196 La. 417,199 So. 377, Cole v. Burgess, La. App., 31 So.2d 450, and Warnick et al. v. Louisiana Highway Commission, La. App., 4 So.2d 607.
[14] The facts of this and the Gaiennie case are as nearly identical as could possibly happen in the realm of motoring. In one respect the present case is somewhat stronger for the plaintiff than appears in the other case. In that case the stationary truck angled across plaintiff's lane of travel five feet and therefore, would have been more easily seen than the truck involved in the case at bar wherein its corner angled only some three feet over the pavement. In both cases the motorist reduced speed to about twenty miles per hour; the vision of each was impaired by the headlights of an on-coming car; both drivers had dimmed their headlights; and in both cases the accident occurred the moment an on-coming car was met and passed. The court, in the Gaiennie case, said:
"The accident involved herein occurred during the year 1937, prior to the enactment *Page 758 
of Act No. 286 of 1938. The law applicable to determine whether or not the plaintiff was guilty of negligence would be Act No. 21 of 1932, Section 3, Rule 4, paragraph (a), which makes it unlawful for any person to drive a motor vehicle upon the roads and highways of this State at any other than a careful, prudent, reasonable and proper speed, having due regard to the traffic, surface and width of the highway, the location and neighborhood, and any other condition or circumstances then existing. The burden of proof is on the defendant to show that the plaintiff was negligent and that his negligence contributed to his injury. Inland Seaboard Coasting Co., v. Tolson,139 U.S. 551, 11 S.Ct. 653, 35 L.Ed. 270; Washington Georgetown R. Co. v. Harmon's Ad'mr, 147 U.S. 571, 13 S.Ct. 557, 37 L.Ed. 284. This doctrine was approved in Loprestie v. Roy Motors, Inc. et al., 191 La. 239, 185 So. 11."
Rule 4(a), Section 3 of the Highway Regulatory Act (No. 286 of 1938) is identical in language with that of the 1932 act.
[15] It is worthy of note to here interpolate that this is not a case wherein the motorist was totally blinded by lights of an approaching car or by atmospheric conditions, under which conditions this and other courts of the state have repeatedly held that the motorist should either stop his car or reduce its speed to the degree that it could be instantly stopped if conditions suddenly required that this be done to avert a collision. Since plaintiff's lights enabled him to see clearly down the road, a distance sufficient in which to stop his car, if necessary from sudden emergency, he was not required to do more than he did for his own protection and that of others. The duty did not devolve upon him to assume that an obstruction to travel, such as occurred, would be on the west edge of his lane of travel, and in such a position that it would be quite difficult, if not impossible, under prevailing conditions, to be seen.
Plaintiff in his original petition sued for $11,000.00, including hospital and medical expenses but by amendment, filed one year later, his demand was increased to $36,000.00. It is alleged that during the time between the two filings his condition had grown worse and the effect of his injuries had proven to be much more far-reaching than when the suit was filed.
The trial judge at length discussed and described the many injuries that plaintiff received, their effect and possible duration. He has so clearly and correctly done this that we again adopt as our own what he. has to say on the subject, to-wit:
"The quantum of damages to be awarded presents a rather difficult question for me to determine. There is no serious controversy over the facts concerning the damages sustained and, in fact, they are practically admitted. The difficulty arises because of the present value of money as a result of inflation and the proper amount to be awarded under the jurisprudence of this state.
"The injuries received by the plaintiff were serious and resulted in much pain and permanent injuries. He was brought to the City of Alexandria after receiving first aid in Glenmora and placed in the Baptist Hospital. Upon examination it it was found that he had a laceration of the forehead and across the bridge of his nose; he had a contused wound on his right leg; he had a fracture of the upper rim of the acetabulum with a displacement of the fracture upward with a marked thinning of the acetabulum and the head of the femur was upward approximately three-fourths of an inch. The X-ray showed arthritic changes involving at least two-thirds of the head of the femur where it fit in the abnormal socket caused by the injury. The injuries caused the right leg to be one inch shorter than the left. There was a chip fracture of the right knee. At the time of the trial there was tenderness there. He had a compound fracture of the jaw and at the time of the trial there was a malalignment which interfered with his mastication of food although there seemed to have been a good union in both fractures. He also had a fractured rib and from the record he undoubtedly suffered a great deal of pain. He was on a fracture bed the majority of the time in the hospital with traction on his right leg; his jaw was bandaged and it gave him much pain. He *Page 759 
has experienced trouble in obtaining a fitting of dentures since the injury to his jaw.
"At the time of the trial he was using a crutch and a cane and the evidence shows that there was a partial ankylosis of the hip joint as a result of the injury and he experienced some pain on the manipulation of that joint. It was the opinion of the doctors that he is permanently disabled from doing any work which would require any considerable standing or weight bearing on the right leg and that because of these conditions he will continue to have pain and discomfort from the injury to his jaw and injury to his hip. These are the salient conditions concerning his injury and concerning which there seems to be no substantial controversy.
"The plaintiff is fifty-seven years of age and was in good health at the time of the injury. He seems to have been able to have had a rather substantial earning capacity before the injury and I am doubtful if he will be able to earn anything of consequence in the future unless he finds something he might do in an office or similar work which would not require him to bear weight on his right limb. Under these facts and circumstances it is my opinion that substantial justice would require a judgment in his favor to cover his injuries, pain and suffering in the sum of $14,000.00."
In addition to the above named award the court allowed recovery for damage to the automobile, hospital and medical bills, etc. in the sum of $1,121.90.
[16] Appellant complains of the judgment as being excessive. Studious consideration of the record, in the light of existing economic conditions, has not convinced us that this is true; nor do we find that the award is inadequate as here contended by appellee.
For the reasons herein given, the judgment from which appealed, is affirmed with costs of suit. *Page 832